# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **KEVIN S. WRIGHT,** ) | |
| ) | |
| Plaintiff, ) | Case No.1:06CV00008 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **JO ANNE B. BARNHART,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Ginger J. Largen, Morefield & Largen, Abingdon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

## I. Background

Kevin S. Wright filed this action challenging the final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits and for supplemental security income benefits under title II of the Social Security Act, 42 U.S.C.A. § § 401-433, 1382 (West 2003 & Supp. 2006) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405 (g).

The plaintiff applied for benefits on May 7, 2003, alleging disability since December 31, 2001, and received a hearing before an administrative law judge ("ALJ") on July 19, 2005. By decision dated September 6, 2005, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administrations's Appeal Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

## II. Facts.

The plaintiff was thirty-five years old at the time of the ALJ hearing, an individual considered a younger person under the regulations. 20 C.F.R. 404.1563(c) (2006). He has a high school education, and past relevant work experience as a telemarketer, diswasher, motel housekeeper, highway maintenance worker, flagman, and voltage tester. (R. 127-34.) The plaintiff alleges disability because of a learning disability and a back impairment.

On March 5, 1998, by request of the Department of Rehabilitative Services, the plaintiff underwent a psychological evaluation conducted by Linda Shaner, L.P.C. (R. at 171.) Ms. Shaner conducted the evaluation to assess the plaintiff's level of

- 2 -

Case 1:06-cv-00008-JPJ-PMS   Document 12   Filed 10/28/06   Page 2 of 11   Pageid#: 58

functioning and to determine whether anxiety had contributed to his physical symptoms. (*Id.*) Although he indicated problems with spelling and mathematics, he believed he could "read okay." (R. at 172.)

Ms. Shaner administered various tests on the plaintiff to assess his level of cognitive and emotional functioning. On the Wide Range Achievement Test-III, he read at the fifth grade level, spelled at the third grade level, and did arithmetic at the fourth grade level. (R. at 173.) On the Adult Basic Learning Exam, his reading comprehension was close to the ninth grade level. On the Wechsler Adult Intelligence Scale-III, his verbal IQ score was ninety, his performance IQ score was ninety-nine and his full scale IQ score was ninety-four, which placed him in the average range of intellectual ability. (R. at 174.) His perceptual organization skills were in the high average range. (*Id.*) On the Rey Auditory Verbal Learning Test, his ability to learn and recall verbal information was below average. (*Id.*) The Millon Index Personality Styles ("MIPS") revealed the plaintiff did not tend to act in an active manner to improve his life. ( R. at 175.) Furthermore, the test results revealed that most people who obtain similar scores on the MIPS tend to possess abilities far in excess of those they actually claim to have. ( *Id.*)

Ms. Shaner found the plaintiff functioning within the average range of intellectual ability. However, she failed to diagnose him with an anxiety-related

disorder. Instead, she diagnosed him with a disorder of written expression and a mathematics disorder, with a possible somatic disturbance as a result of situational distress. ( R. at 178.)

Padamaja P. Polavarapu, M.D., treated the plaintiff for symptoms of sinusitis and chronic back pain from January 2001 through August 2003. (R. at 12.) In February 2003, Dr. Polavarapu referred the plaintiff for a series of diagnostic studies.

On February 19, 2003, Stephen P. Raskin, M.D., administered a lumbar MRI and a hip MRI on the plaintiff. (R. at 232.) The MRI of the plaintiff's hip was normal. The MRI of his lumbar spine revealed "mild" multi-level degenerative disc disease and disc bulging, but increased dehydration at L2-L3. (*Id.*) However, Dr. Raskin found no herniated disc fragments or spinal stenosis. (*Id.*)

In early March 2003, Dr. Polavarpu examined the plaintiff. (R. at 209-10.) A straight let rasing exam was negative. On range of motion testing of his back, he flexed twenty degrees, extended ten degrees, moved laterally right twenty degrees and laterally left thirty degrees, and rotated right twenty degrees and left thirty degrees. (R. at 210.)

On March 27, 2003, Edgar Weaver M.D., a neurosurgeon, performed a consultative examination on the plaintiff. Dr. Weaver revived the MRI scan and found no evidence of root compression, though he did find some degenerative

- 4 -

changes. Dr. Weaver noted that the plaintiff was able to flex and extend with mechanical axial signs. Although Dr. Weaver diagnosed the plaintiff with degenerative lumbar spine disease, he felt it could be managed without surgery.

On March 25, 2005 Robert Smith, Ph.D, a psychologist, examined the plaintiff. The plaintiff complained to Dr. Smith that he was disabled due to a back disorder and an affective disorder. (R. at 237.) During the examination, Dr. Smith observed no evidence of hallucinations, thought disorders, or anxiety on part of the plaintiff. (R. at 239.) The plaintiff was able to follow simple and complex instructions. His mathematical computation skills were grossly intact. (R. at 239.) He exhibited no signs of a thought disorder and his thoughts were noted to be sequential and logical. ( R. at 239.)

Dr. Smith found the plaintiff had a mild mood disorder and that it had minimal adverse effects on his work performance. ( R. at 242.) Although Dr. Smith was not able to diagnose a learning disability, he suspected one was present. At the conclusion of the evaluation, Dr. Smith believed the plaintiff's prognosis was good. (R. at 243.)

On April 18, 2005, William Humphries, M.D., examined the plaintiff. The plaintiff indicated to Dr. Humphries he had had low back pain for about five or six years and that it had begun suddenly without any trauma or injury. Dr. Humprhies

- 5 -

Case 1:06-cv-00008-JPJ-PMS   Document 12   Filed 10/28/06   Page 5 of 11   Pageid#: 61

opined that the plaintiff's back range of motion was slightly reduced with mild dorsal kyphosis. However, the plaintiff exhibited a full range of motion of his upper and lower extremities. ( R.at 248.) A straight leg raising test was found to be negative. The paraspinous muscles of his thoractic and lumbar spine were non-tender to palpation. (R. at 248-49.) Dr. Humphries believed the plaintiff retained the ability to perform a wide-range of light to medium work which involved sitting and standing/walking six hours each in an eight-hour workday and lifting twenty-five to fifty pounds occasionally and ten to twenty-five pounds frequently. (R. 249-255.)

Olen Dodd, a vocational expert, testified at the hearing before the ALJ. When asked whether someone in the plaintiff's condition could still perform light work, Mr. Dodd indicated such a person could still perform light type work. (R. at 55.) Mr. Dodd further testified that a hypothetical individual in the plaintiff's condition and with his background could perform a significant number of light jobs in the national economy which allowed for a sit/stand option, within such occupations as hand packager, small products assembler, and security guard. (R. at 56-59.) He also testified the plaintiff could return to his past relevant work as diswasher, motel housekeeper, highway maintenance worker, flagman, and voltage tester, as previously performed and as generally performed in the national economy. (R. at 16.)

### III. Analysis.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision, and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g). *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws* v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences, in the evidence. It is not the role of the court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner applies a five-step sequential evaluation process when assessing an applicant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she

could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2006). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See* § 404.1520(a) (2006); *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

The ALJ determined that based on the plaintiff's age, educational background, work experience, and residual functional capacity, he was capable of performing work that exists in significant numbers in the national economy. Therefore, the general issue is whether there is substantial evidence on the record to support the Commissioner's findings that the plaintiff is not under a disability as defined by the Act. 20 C.F.R. §§ 404.1520(g), 416.920(g) (2006).

The plaintiff argues substantial evidence fails to support the Commissioner's finding that he is not under a disability. The plaintiff asserts that due to a back impairment and learning disability he cannot perform substantial gainful work activity. Although there is some indication the plaintiff does suffer from certain impairments and general discomfort, an individual does not have to be pain-free in order to be found not disabled. *Hays*, 907 F.2d at 1457-58.

The burden rests on the plaintiff to establish that he is medically disabled and unable to work. *Yuckert*, 482 U.S. at 147. In the instant case, the plaintiff has failed to present any evidence, medical or otherwise, that would suggest he is not disabled

as defined by the applicable regulations. Additionally, the plaintiff has failed to point to any portion of the record that would controvert the ALJ's findings. The plaintiff simply relies on conclusionary statements unsupported by fact or legal authority.

The medical evidence before the ALJ coupled with the testimony of the vocational expert provided substantial evidence to support a finding that the plaintiff was not disabled due to his back impairments and any alleged learning disability. The plaintiff's contention to the contrary is simply without merit.

In 1998, after evaluating the plaintiff, Ms. Shaner found that he was functioning within the average range of intellectual ability. The examination conducted in 2005 by the psychologist, Dr. Smith, also provided substantial evidence upon which the ALJ could have based his decision. While examining the plaintiff, Dr. Smith observed no evidence of hallucinations, thought disorders, or anxiety on the part of the plaintiff. Dr. Smith opined that the plaintiff was able to follow simple and complex instructions, and further noted that the plaintiff's mathematical computation skills were grossly in tact. During the examination, he exhibited no signs of a thought disorder and his thoughts were noted to be sequential and logical. Dr. Smith also failed to diagnose the plaintiff with a learning disability.

The medical evidence stemming from the plaintiff's treatment from Dr. Weaver, Dr. Raskin, and Dr. Humphries also provided the ALJ with substantial

- 9 -

evidence upon which to base his decision. In 2003, during a consultative examination, Dr. Weaver found no evidence of root compression, though he did find some degenerative changes. Dr. Weaver noted that the plaintiff was able to flex and extend with mechanical axial signs. Although Dr. Weaver diagnosed the plaintiff with degenerative lumbar spine disease, he felt it could be managed without surgery.

Furthermore, in 2003, the MRI administered by Dr. Raskin indicated no herniated disc fragments or spinal stenosis.

In 2005, Dr. Humphries opined that the plaintiff exhibited a full range of motion of his upper and lower extremities. A straight leg raising test he conducted on the plaintiff was found to be negative. The paraspinous muscles of his thoractic and lumbar spine were non-tender to palpation. Finally, Dr. Humphries believed the plaintiff retained the ability to perform a wide-range of light to medium work which involved sitting and standing/walking six hours each in an eight hour workday and lifting twenty-five to fifty pounds occasionally and ten to twenty-five pounds frequently.

Based upon the evidence from Dr. Weaver, Dr. Raskin, and Dr. Humphries, the ALJ had substantial evidence to support his decision that the plaintiff was not disabled.

- 10 -

Case 1:06-cv-00008-JPJ-PMS   Document 12   Filed 10/28/06   Page 10 of 11   Pageid#: 66

*IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

                              DATED: October 28, 2006

                              /s/ JAMES P. JONES
                              Chief United States District Judge